GMAC LLC v DEPARTMENT OF TREASURY

NUVELL CREDIT COMPANY LLC v DEPARTMENT OF TREASURY

Docket Nos. 289261, 289262, 289263, and 289266. Submitted June 2, 2009, at Lansing. Decided December 3, 2009, at 9:05 a.m.

GMAC LLC and Nuvell Credit Company LLC, which provide financing for consumer purchases of motor vehicles sold by automotive dealerships in Michigan, brought actions in the Court of Claims against the Department of Treasury, seeking a refund under the bad debt deduction contained in § 4i of the General Sales Tax Act, MCL 205.54i, in accordance with the interpretation of that provision by the Court of Appeals in *DaimlerChrysler Services North America LLC v Dep't of Treasury*, 271 Mich App 625 (2006). Defendant had denied plaintiffs' refund claims that were filed on September 21, 2007, and December 20, 2007. The Court of Claims, James R. Giddings, J., consolidated the cases and granted summary disposition for the defendant, holding that application of the amendment to MCL 205.54i that was approved and filed on October 1, 2007, given immediate effect, and expressly given retroactive application, and which corrected any misinterpretation of the term "taxpayer" that may have been caused by the *DaimlerChrysler* decision, required a finding that the plaintiffs are not entitled to a refund of the sales tax that had been remitted to the defendant by the automotive dealerships. The plaintiffs appealed. The appeals were consolidated.

The Court of Appeals *held*:

1. The enacting section of 2007 PA 105, which amended MCL 205.54i, shows that the Legislature determined that the *Daimler-Chrysler* decision was contrary to the Legislature's intent with regard to MCL 205.54i and that the statute was amended to correct the conclusion reached in the *DaimlerChrysler* decision. The Legislature made clear that the bad debt deduction was available only to those individuals who remitted the tax and was not available to entities like the plaintiffs who did not remit the tax.

2. The plaintiffs did not have a vested right in the continuation of tax law. The plaintiffs' due process rights were not violated as a result of the application of the amended version of MCL 205.54i to their claims.

Affirmed.

*Honigman Miller Schwartz and Cohn LLP* (by *Alan M. Valade, June Summers Haas,* and *John D. Pirich*) for plaintiffs.

*Michael A. Cox,* Attorney General, *B. Eric Restuccia,* Solicitor General, and *Bruce C. Johnson, Heather M.S. Durian, Shenique A. Moss, Michael S. Newell,* and *Drew M. Taylor,* Assistant Attorneys General, for defendant.

Amici Curiae:

*Robert S. LaBrant* for the Michigan Chamber of Commerce.

*Clark Hill PLC* (by *David D. Grande-Cassell*) for the Michigan Manufacturers' Association.

*Willingham & Coté PC* (by *Raymond J. Foresman, Jr.*) for the Michigan Automobile Dealers' Association.

*Abbott Nicholson PC* (by *Robert Y. Weller, II*) for the Detroit Automotive Dealers' Association.

*McClelland & Anderson LLP* (by *Gregory L. McClelland*) for the Michigan Association of Realtors.

Before: FORT HOOD, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM. Plaintiffs appeal as of right the order granting summary disposition in favor of defendant. In this tax dispute, plaintiffs contend that a refund should be awarded pursuant to the bad debt deduction, MCL 205.54i, as interpreted by this Court in *DaimlerChrysler Services North America LLC v Dep't of Treasury,* 271 Mich App 625; 723 NW2d 569 (2006), despite the recent amendment to the statute clarifying the availability of the deduction. The Court of Claims held that the legislative

amendment was clear and unambiguous and, therefore, plaintiffs were not entitled to the deduction. We affirm.

In *DaimlerChrysler*, *supra* at 627, the plaintiff financed consumer purchases of motor vehicles from participating dealerships. If the plaintiff agreed to finance the transaction, the consumer executed a retail installment sales contract with the dealership, and the dealer retained a security interest in the vehicle. The plaintiff and the dealership agreed that the plaintiff would pay the dealers all the amounts due under the contract, including the sales tax on the purchase price of the vehicle. In exchange, the dealers assigned all rights, titles, and interests in the motor vehicle purchase agreements to the plaintiff. However, the dealers remitted the sales tax to the defendant. The plaintiff was assigned the right to repossess the vehicles when consumers defaulted on the contracts. However, the plaintiff was unable to recover the balance due on some of the contracts. Consequently, the plaintiff determined that it had overstated its gross receipts as a result of uncollectible bad debt and sought a refund or deduction on the alleged overpayment. *Id.* at 627-628. The hearing referee and the Court of Claims denied the plaintiff's requested relief, concluding that the plaintiff, as the financing provider, did not constitute a taxpayer for purposes of MCL 205.54i, and that an assignee did not achieve the status of a person subject to the act and is not allowed a sales tax deduction under the act for bad debt. *Id.* at 628-630.

The Court of Appeals held that the plaintiff was a taxpayer under the statute, holding:

> We conclude that, consistent with MCL 492.102(6), [the] plaintiff was a sales finance company "financing installment sale contracts" between the dealers and the purchasers who defaulted on their loans. As noted above, the

pre-2004 GSTA [General Sales Tax Act] defined "taxpayer" as "a person subject to a tax under this act." MCL 205.51(1)(m). A "person" was defined as "an individual, firm, partnership, joint venture . . . *or any other group or combination acting as a unit* . . . . MCL 205.51(1)(a) (emphasis added.) The statute, by its plain language, contemplated a broad array of taxpayers. It also expressly declared that "any other group or combination" of persons may have been "acting as a unit," and, therefore, could have been considered as a single taxpayer.

Defendant concedes and we agree that the dealers, as retailers, fell under the statute—otherwise defendant would be owed no tax in the first place—even though the statute's definition of "person" contained no reference to "retailers" or "motor vehicle dealers." Given the fact that motor vehicle sales frequently require financing, and that plaintiff here was the financing company, we conclude that the dealers and plaintiff were "acting as a unit," i.e., as a single, taxable entity, for the purpose of the retail sales of automobiles. Any other reading would render the language referring to a "combination" of persons "acting as a unit" nugatory.

* * *

[W]e conclude that plaintiff was a sales finance company that, along with its affiliated dealers, intended to act as one unit to make sales of motor vehicles; that plaintiff was engaged in business in Michigan; and, for those reasons, was a taxpayer under the GSTA. Further, we determine that plaintiff's bad debt was related to sales at retail because the sales themselves were "transactions by which transfer" of tangible property occurred. Plaintiff is entitled to recover from defendant sales tax overpayments under the bad-debt provision in effect at the time its claim accrued. [*Id.* at 635-636, 640.]

The Supreme Court denied the defendant's application for leave to appeal, 477 Mich 1043 (2007), and also denied a motion for reconsideration, 478 Mich 932 (2007).

In this case, plaintiffs, GMAC LLC and Nuvell Credit Company LLC, also provide financing for consumer

purchases of motor vehicles sold by automotive dealerships in Michigan. Specifically, plaintiffs alleged that they provided financing to facilitate consumer purchases of automobiles from dealerships, which included Michigan sales tax. However, it was concluded that plaintiffs overstated their gross receipts as a result of bad debts. Because of the *DaimlerChrysler* decision, plaintiffs filed sales tax refund claims on September 21, 2007, and December 20, 2007. However, MCL 205.54i was amended to place limitations on the person that may be characterized as a "taxpayer" for purposes of the bad debt provision. 2007 PA 105. The amendment to MCL 205.54i also contains the following enacting provision:

> Enacting section 1. This amendatory act is curative and shall be retroactively applied, expressing the original intent of the [L]egislature that a deduction for a bad debt for a taxpayer under the general sales tax act, 1933 PA 167, MCL 205.51 to 205.78, is available exclusively to those persons with the legal liability to remit the tax on the specific sale at retail for which the bad debt deduction is recognized for federal income tax purposes, and correcting any misinterpretation of the meaning of the term "taxpayer" that may have been caused by the Michigan [C]ourt of [A]ppeals decision in <u>Daimler Chrysler</u> [sic] <u>Services North America LLC</u> v <u>Department of Treasury</u>, No. 264323 [271 Mich App 625; 723 NW2d 569 (2006)]. However, this amendatory act is not intended to affect a refund required by a final order of a court of competent jurisdiction for which all rights of appeal have been exhausted or have expired if the refund is payable without interest and after September 30, 2009 and before November 1, 2009.

The amendment to MCL 205.54i was approved and filed on October 1, 2007, given immediate effect, and expressly provided for retroactive application.

Unable to obtain a refund from defendant, plaintiffs filed complaints in the Court of Claims that requested

tax refunds, relying on the *DaimlerChrysler* decision interpreting the bad debt deduction. The cases were consolidated, and following cross-motions for summary disposition, the Court of Claims denied plaintiffs' motion and granted defendant's motion for summary disposition, holding, in relevant part:

> Defendant asserts that the plain meaning of this statutory language retroactively reverses the ruling in *Daimler-Chrysler, supra,* except as to taxpayers who had final judgments for a refund when [2007] PA 105 was enacted with immediate effect on October 1, 2007. The Court agrees.
>
> Plaintiffs espouse, however, a different view that appears to ignore the amendment's express mandate for its retroactive application. Noting that [2007] PA 105 expressly mentions only two dates in 2009 and is absolutely silent as to a deadline date for winning a final order for a refund, Plaintiffs contend that they must have until October 31, 2009 to pursue a final judgment. That interpretation must be rejected. Plaintiffs' reading of the act entails the patently erroneous idea, contradicted by the amendment itself, that the Legislature did not intend 2007 PA 105 to be applied retroactively to correct the misinterpretation of § 4i made by the *DaimlerChrysler* [C]ourt.
>
> It follows that Plaintiffs can have no cause of action under the bad-debt provisions of § 4i. Whatever possibility of such a suit they had immediately consequent to the ruling in *DaimlerChrysler* was extinguished on October 1, 2007 with the enactment of [2007] PA 105. Plaintiffs' motion must therefore be denied to the extent that it relies on a mistaken interpretation of the amendatory provisions in the act.
>
> The Court determines that the provisions of the GSTA pertinent to this case are clear and unambiguous. . . .
>
> In the alternative, Plaintiffs also argue that the retro-activity provision of [2007] PA 105, even if actually intended to take effect immediately when enacted on October 1, 2007, is unconstitutional because the amended § 4i of the

GSTA offends several constitutional provisions, including but not limited to the Due Process Clause, the Equal Protection Clause, the Special Act Clause, and the Title-Object Clause. The Court must disagree and reject all of Plaintiffs' constitutional challenges for the reasons stated and on the authorities cited in Defendant's briefs.

\* \* \*

The challenge to § 4i as a violation of the various constitutional provisions, whether as written or as applied in this instance, must fail on the basis of Defendant's analysis. Accordingly, the Court can find nothing in that statute that renders it constitutionally infirm. In sum, Plaintiffs have not established that the challenged statute is unconstitutional either as written or as applied by Defendant in denying sales tax refunds in these matters.

The Court determines that Plaintiffs have failed to plead an actionable claim for a tax refund because § 4i of the GSTA, as recently amended by 2007 PA 105, cannot reasonably be read to permit the cause of action Plaintiffs mount here. Nor is the same legislation unconstitutional in any of the ways alleged by Plaintiffs. Plaintiffs are not due a tax refund. Rather, Defendant's denial of these tax refunds under § 4i is well within the parameters of the GSTA and is therefore lawful. In sum, Plaintiffs have failed to state a claim on which relief can be granted. Plaintiffs' motion for summary disposition under MCR 2.116(C)(10) must therefore be denied and Defendant's motion for summary disposition pursuant to MCR 2.116(C)(8) must be granted.

Plaintiffs appeal as of right from the Court of Claims decision.

First, plaintiffs submit that the Court of Claims erred in its construction of the enacting section where the plain and unambiguous language of the enacting section of 2007 PA 105 provides for a refund of the sales tax. We disagree.

The trial court's decision regarding a motion for summary disposition is reviewed de novo. *Seyburn, Kahn, Ginn, Bess, Deitch & Serlin, PC v Bakshi*, 483 Mich 345, 354; 771 NW2d 411 (2009). Questions involving statutory interpretation and the constitutionality of a statute present questions of law subject to review de novo. *Hunter v Hunter*, 484 Mich 247, 257; 771 NW2d 694 (2009). The language of the statute expresses the legislative intent. *Dep't of Transportation v Tomkins*, 481 Mich 184, 191; 749 NW2d 716 (2008). The rules of statutory construction provide that a clear and unambiguous statute is not subject to judicial construction or interpretation. *Id.* Stated otherwise, when a statute plainly and unambiguously expresses the legislative intent, the role of the court is limited to applying the terms of the statute to the circumstances in a particular case. *Id.* We may not speculate regarding the intent of the Legislature beyond the words expressed in the statute. *Lash v Traverse City*, 479 Mich 180, 194; 735 NW2d 628 (2007). Once the intention of the Legislature is discovered, this intent prevails regardless of any conflicting rule of statutory construction. See *People v Russo*, 439 Mich 584, 595; 487 NW2d 698 (1992); *Thompson v Thompson*, 261 Mich App 353, 361 n 2; 683 NW2d 250 (2004). "Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there." *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993). The omission of a provision should be construed as intentional. "It is a well-known principle that the Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws." *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993). The Legislature is presumed to act with knowledge of

judicial statutory interpretations. *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 505-506; 475 NW2d 704 (1991). When statutory provisions are construed by the court and the Legislature reenacts the statute, it is assumed that the Legislature acquiesced to the judicial interpretation. *Smith v Detroit*, 388 Mich 637, 650-651; 202 NW2d 300 (1972). Similarly, when a judicial decision is released and the Legislature acts to change the language of the statute, it is strong evidence of the disapproval of the judicial interpretation. See *id.* at 651. "Every word of a statute should be given meaning and no word should be treated as surplusage or rendered nugatory if at all possible." *Baker v Gen Motors Corp*, 409 Mich 639, 665; 297 NW2d 387 (1980).

Plaintiffs' contention, that the Legislature intended to preserve refunds for any entity previously entitled pursuant to the *DaimlerChrysler* decision, is contrary to the plain language of the statute and ignores the language preceding the sentence in dispute. As previously stated, the enacting section provides:

> Enacting section 1. This amendatory act is curative and shall be retroactively applied, expressing the original intent of the [L]egislature that a deduction for a bad debt for a taxpayer under the general sales tax act, 1933 PA 167, MCL 205.51 to 205.78, is available exclusively to those persons with the legal liability to remit the tax on the specific sale at retail for which the bad debt deduction is recognized for federal income tax purposes, and correcting any misinterpretation of the meaning of the term "taxpayer" that may have been caused by the Michigan [C]ourt of [A]ppeals decision in Daimler Chrysler [sic] Services North America LLC v Department of Treasury, No. 264323 [271 Mich App 625; 723 NW2d 569 (2006)]. However, this amendatory act is not intended to affect a refund required by a final order of a court of competent jurisdiction for which all rights of appeal have been exhausted or have

expired if the refund is payable without interest and after September 30, 2009 and before November 1, 2009.

Review of the first sentence of the enacting section reveals that the Legislature held that the *Daimler-Chrysler* decision was contrary to legislative intent and the statute was amended to correct the conclusion reached by that decision. In order to correct the judicial interpretation, the Legislature provided that the statute was curative, "shall be retroactively applied," and expressed its intent that the bad debt deduction was available only to those individuals who remitted the tax. The rules of statutory construction provide that once the intention of the Legislature is discovered, the intent prevails regardless of any conflicting rule of statutory construction. *Thompson, supra.* In this case, the Legislature's intent is plainly expressed, the enacting section contains the statement that amendment was required to express their original intent regarding the construction of the term "taxpayer" and to correct the misinterpretation that allowed the bad debt deduction to an entity other than the remitter of the tax.

Plaintiffs contend that the second sentence, which allows for a refund, creates an exception to the general rule. However, the application of the language as urged by plaintiffs would obviate the intent plainly expressed by the Legislature as well as contradict the legislative provisions that the statute was curative in nature and to be given immediate retroactive effect. *Baker, supra.* Moreover, "[a]n exemption will not be inferred from language of a statute if the words admit of any other reasonable construction." *In re D'Amico Estate*, 435 Mich 551, 567; 460 NW2d 198 (1990) (GRIFFIN, J., dissenting). Tax exemptions are disfavored, and the burden of proving an entitlement to an exemption is on the party claiming the right to the exemption. *Elias*

*Bros Restaurants, Inc v Treasury Dep't*, 452 Mich 144, 150; 549 NW2d 837 (1996). Tax exemptions are in derogation of the principle that all shall bear a proportionate share of the tax burden, and therefore, a tax exemption shall be strictly construed. *Retirement Homes of the Detroit Annual Conference of the United Methodist Church, Inc v Sylvan Twp*, 416 Mich 340, 348; 330 NW2d 682 (1982). The rules of construction with regard to taxation provide:

"An intention on the part of the legislature to grant an exemption from the taxing power of the State will never be implied from language which will admit of any other reasonable construction. Such an intention must be expressed in clear and unmistakable terms, or must appear by necessary implication from the language used, for it is a well-settled principle that, when a specific privilege or exemption is claimed under a statute, charter or act of incorporation, it is to be construed strictly against the property owner and in favor of the public. This principle applies with peculiar force to a claim of exemption from taxation. Exemptions are never presumed, the burden is on a claimant to establish clearly his right to exemption, and an alleged grant of exemption will be strictly construed and cannot be made out by inference or implication but must be beyond reasonable doubt. In other words, since taxation is the rule, and exemption the exception, the intention to make an exemption ought to be expressed in clear and unambiguous terms; it cannot be taken to have been intended when the language of the statute on which it depends is doubtful or uncertain; and the burden of establishing it is upon him who claims it. Moreover, if an exemption is found to exist, it must not be enlarged by construction, since the reasonable presumption is that the State has granted in express terms all it intended to grant at all, and that unless the privilege is limited to the very terms of the statute the favor would be extended beyond what was meant." [*Detroit v Detroit Commercial College*, 322 Mich 142, 148-149; 33 NW2d 737 (1948), quoting 2 Cooley, Taxation (4th ed), § 672, p 1403.]

The language limiting the refund to those from a court of competent jurisdiction for which all appeals have been exhausted or have expired if the refund is payable without interest and after September 30, 2009, and before November 1, 2009, provides the Legislature with the opportunity to budget for expenditures that it never intended.[1] The plain language does not provide for a window of opportunity for similarly situated financing companies to hurriedly obtain a refund that was never intended.[2]

Plaintiffs next allege that retroactive application of the amended version of MCL 205.54i violates due pro-

---

[1] We do not express any opinion with regard to the statutory language to the extent it provides for a refund paid without interest and within a specific time.

[2] We note that plaintiffs raise an argument with regard to the applicability of the term "final order," whether the enacting language at issue was designed to apply only to the plaintiff in *DaimlerChrysler*, and whether the *DaimlerChrysler* plaintiff could meet the criteria of the enacting language. Additionally, plaintiffs raise an argument regarding the use of the past tense in the enacting language. We also reject these arguments. The intent of the Legislature was plainly expressed; the statute was never intended to apply to taxpayers who did not remit the tax. Once the intent of the Legislature is discovered, it controls regardless of the application of other rules of statutory construction. *Russo, supra*; *Thompson, supra*. Moreover, application of a tax exemption is at issue. An exemption must be strictly construed and cannot be permitted by inference or implication. *Detroit Commercial College, supra*. Although plaintiffs did not assert that the amendment to MCL 205.54i constitutes a violation of Const 1963, art 4, § 29 (the Legislature shall not pass a local act or special act where a general act can be made applicable), the issue was submitted in supplemental briefing. However, plaintiffs do not provide record evidence of the applicability of the *DaimlerChrysler* decision to smaller financing companies and other parties who have sought the bad debt deduction. "Courts may not speculate regarding the probable intent of the Legislature beyond the language expressed in a statute." *W A Foote Mem Hosp v City of Jackson*, 262 Mich App 333, 336; 686 NW2d 9 (2004). Additionally, the facts and circumstances surrounding the application of the amendment to the *DaimlerChrysler* plaintiff, any final order, any refund, and the date of such refund is not before us, and we will not speculate regarding its effect on the case before this panel.

cess because plaintiffs had accrued vested rights. We disagree. The determination regarding whether a statute applies retroactively is governed by the intent of the Legislature. *Aztec Air Service, Inc v Dep't of Treasury*, 253 Mich App 227, 233; 654 NW2d 925 (2002). The general rule is that an amended statute is given prospective application unless the Legislature expressly or impliedly identifies its intention to give the statute retrospective effect. *Etefia v Credit Technologies, Inc*, 245 Mich App 466, 474; 628 NW2d 577 (2001). However, constitutional due process principles act to prevent retrospective laws from divesting property rights or vested rights. *Detroit v Walker*, 445 Mich 682, 698; 520 NW2d 135 (1994). A vested right is "an interest that the government is compelled to recognize and protect of which the holder could not be deprived without injustice." *Id.* at 699 (citations omitted). Stated otherwise,

> "a right cannot be considered a vested right, unless it is something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws; it must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exemption from a demand made by another." [*Cusick v Feldpausch*, 259 Mich 349, 352; 243 NW 226 (1932), quoting 2 Cooley, Constitutional Limitations (8th ed), p 749.]

To determine whether a right is vested, policy considerations are controlling rather than inflexible definitions, and the courts must consider whether the holder possesses a title interest in the asserted right. *Walker, supra.* "As a matter of policy, it is imperative that taxpayers do not hide behind the facade of vested rights in an attempt to evade their financial responsibilities." *Walker, supra* at 702. A taxpayer does not have a vested

right in a tax statute or in the continuance of any tax law. *Id.* at 703 (citations omitted).

Here, plaintiffs contend that vested rights exist with regard to the continuation of tax law. However, a vested right cannot be premised on an expectation that general laws will continue and certainly cannot be premised on the continuation of tax law. *Id.* In light of the fact that plaintiffs did not have a vested right, the contention that due process rights were violated is simply without merit.

Next, plaintiffs assert that the seven-year retroactive application of the amended MCL 205.54i constitutes a due process violation and the requirement that retroactive legislation be limited to a modest period of retroactivity. We disagree. In *United States v Carlton*, 512 US 26, 28-29; 114 S Ct 2018; 129 L Ed 2d 22 (1994), the facts showed that Willametta K. Day died on September 29, 1985. The executor of her estate purchased stock shares on December 10, 1986. Two days after the purchase, the executor sold the stock shares at a loss to reduce the estate tax by $2,501,161. The parties stipulated that the executor engaged in the stock transactions to take advantage of a tax deduction that had been adopted in October 1986. Consequently, the Internal Revenue Service (IRS) announced that it would make the deduction available only to estates of decedents who owned the securities at issue before death. On December 22, 1987, Congress enacted an amendment to 26 USC 2057 that eliminated the refund sought by the executor of Day's estate. The IRS disallowed the deduction claimed by the executor, who then filed suit, alleging that the retroactive application of the 1987 amendment violated the Due Process Clause of the Fifth Amendment. The Supreme Court rejected the constitutional challenge, holding:

It seems clear that Congress did not contemplate such broad applicability of the deduction when it originally adopted § 2057. That provision was intended to create an "incentive for stockholders to sell their companies to their employees who helped them build the company rather than liquidate, sell to outsiders or have the corporation redeem their shares on behalf of existing shareholders." When Congress initially enacted § 2057, it estimated a revenue loss from the deduction of approximately $300 million over a 5-year period. In became evident shortly after passage of the 1986 Act, however, that the expected revenue loss under § 2057 could be as much as $7 billion—over 20 times greater than anticipated—because the deduction was not limited to situations in which the decedent owned the securities immediately before death. . . .

We conclude that the 1987 amendment's retroactive application meets the requirements of due process. First, Congress' purpose in enacting the amendment was neither illegitimate nor arbitrary. Congress acted to correct what it reasonably viewed as a mistake in the original 1986 provision that would have created a significant and unanticipated revenue loss. There is no plausible contention that Congress acted with an improper motive[.] . . .

Second, Congress acted promptly and established only a modest period of retroactivity. . . .

[The executor] argues that the 1987 amendment violates due process because he specifically and detrimentally relied on the preamendment version of § 2057 in engaging in the MCI stock transactions in December 1986. Although [the executor's] reliance is uncontested—and the reading of the original statute on which he relied appears to have been correct—his reliance alone is insufficient to establish a constitutional violation. Tax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code. . . . Moreover, the detrimental reliance principle is not limited to retroactive legislation. An entirely prospective change in the law may disturb the relied-upon expectations of individuals, but such a change would not be deemed therefore to be violative of due process. [*Id.* at 31-34 (citations omitted).]

We conclude that plaintiffs' reliance on the *Carlton* decision is misplaced. Plaintiffs are not challenging the retroactive amendment to MCL 205.54i; rather, plaintiffs are challenging the Legislature's disapproval and corrective action with regard to the *DaimlerChrysler* decision. Indeed, in their brief on appeal, plaintiffs acknowledge that the prior version of MCL 205.54i was not the impetus for this lawsuit, but rather, "[plaintiffs] filed their sales tax refund claims based on the Court of Appeals' 2006 decision in *DaimlerChrysler*[.]" However, it is the province of the Legislature to acquiesce in the judicial interpretation of a statute or to amend the legislation to obviate a judicial interpretation. *Walen, supra; Smith, supra.*

Lastly, plaintiffs contend that the trial court erred by failing to grant summary disposition in their favor pursuant to MCR 2.116(C)(10), because defendant failed to submit documentary evidence in opposition and there was no genuine issue of material fact. We disagree. This case presented a challenge to statutory language, a question of law. *Hunter, supra.* The duty to interpret and apply the law belongs to the courts, not the parties' witnesses. *Hottmann v Hottmann,* 226 Mich App 171, 179-180; 572 NW2d 259 (1997).

Affirmed.