*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SUSAN MICKELS,

        Plaintiff-Appellee,

v

SUBURBAN MOBILITY FOR REGIONAL
TRANSPORTATION, also known as SMART,

        Defendant-Appellant,

and

D. MACRO CONTRACTORS, INC.,

        Defendant/Cross-Defendant,

and

CB ASPHALT MAINTENANCE, LLC,

        Defendant,

and

POCO, INC.,

        Defendant/Cross-Plaintiff.

UNPUBLISHED
February 4, 2020

No. 344977
Wayne Circuit Court
LC No. 16-013725-NI

Before: FORT HOOD, P.J., and SERVITTO and BOONSTRA, JJ.

BOONSTRA, J., (*dissenting*).

Sometimes drivers are entitled to rely upon posted speed limits. That is not my view; that is what our Legislature has said. I therefore respectfully dissent, because the majority has, in my view, supplanted the Legislature's policy determination with its own.[1]

In the usual context, the Legislature has required that drivers consider existing driving conditions in determining the speed that is appropriate to those conditions:

> A person operating a vehicle on a highway[2] shall operate that vehicle at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and of any other condition existing at the time. A person shall not operate a vehicle upon a highway at a speed greater than that which will permit a stop within the assured, clear distance ahead. [MCL 257.627(1).]

The Legislature effectuated this policy determination – again in the usual context – in the immediately succeeding statutory subsection, MCL 257.627(2). In subsection (2), the Legislature set forth what it determined to be appropriate speed limits for various types of roadways, depending, for example, on how many vehicular access points[3] there are, or whether the roadway is in a business district, a residential subdivision, or a public park. But in doing so, the Legislature subjected those speed limits to the obligation set forth in subsection (1), thereby requiring drivers to give "due regard to the traffic, surface, and width of the highway and of any other condition existing at the time," and to adjust their speed accordingly to that which is "a careful and prudent speed not greater than nor less than is reasonable and proper" in light of those existing conditions. MCL 257.627(1).

How did it do that? By prefacing subsection (2) with the following preliminary language, "Except as provided in subsection (1) . . . ." See MCL 257.627(2). In other words, drivers are entitled to drive at the statutorily determined speed limits unless particular conditions (such as fog, rain or snow, ice, heavy traffic) exist at the time, such that those speed limits are no longer "reasonable or proper," in which case the driver must drive at a speed that is "careful and prudent" for the conditions. MCL 257.627(1).

It is on this basis that the majority holds defendant[4] (through its bus driver) accountable for determining what was a "careful and prudent speed" for the conditions that existed in this

---

[1] As this Court and our Supreme Court have often noted, making public policy is a job for the Legislature, not the courts. See, e.g., *In re Mardigan Estate*, 502 Mich 154, 170; 917 NW2d 325 (2018), citing *Terrien v Zwit*, 467 Mich 56, 67; 648 NW2d 602 (2002).

[2] " 'Highway or street' means the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." MCL 257.20.

[3] " 'Vehicular access point' means a driveway or intersecting roadway." MCL 257.627(18)(b).

[4] By "defendant," I am referring to defendant Suburban Mobility for Regional Transportation, also known as "SMART."

case, notwithstanding the posted speed limit. The defect in the majority's analysis, in my view, is that the Legislature has determined that in this particular factual context – in which road construction comprises the "condition existing at the time" – subsection (1) simply does not apply. How do we know that? Because the Legislature enacted subsection (6) to govern in the context of road construction, and determined as a matter of public policy that:

> A person operating a vehicle on a highway, when entering and passing through a work zone described in section 79d(a)[5] where a normal lane or part of the lane of traffic has been closed due to highway construction, maintenance, or surveying activities, shall not exceed a speed of 45 miles per hour unless a different speed limit is determined for that work zone by the state transportation department, a county road commission, or a local authority, based on accepted engineering practice. The state transportation department, a county road commission, or a local authority shall post speed limit signs in each work zone described in section 79d(a) that indicate the speed limit in that work zone and shall identify that work zone with any other traffic control devices necessary to conform to the Michigan manual of uniform traffic control devices. A person shall not exceed a speed limit established under this section or a speed limit established under section 628.[6] [MCL 257.627(6).]

And how do we know that the obligations of subsection (1) do not apply in that context? Because, unlike in subsection (2), the Legislature did not preface subsection (6) with the language, "Except as provided in subsection (1) . . . ," and therefore did not subject a driver's obligations in the "work zone" setting described in subsection (6) with the additional obligation of subsection (1) to adjust the driver's speed to what is a "careful and prudent speed" for the conditions.

In this case, plaintiff agrees that the "condition existing at the time," MCL 257.627(1), was road construction. She does not argue that there was any other "condition existing at the time" that would have impacted what was a "reasonable and proper" speed. *Id*. She further agrees that the incident giving rise to this action occurred in a "work zone," as defined in MCL 257.629d(a).[7] Therefore, MCL 257.627(6) applies here.

---

[5] MCL 257.629d(a) defines a "[w]ork zone" as including "a portion of a street or highway that . . . [i]s between a "work zone begins" sign and an "end road work" sign." A "work zone" also includes certain activities "conducted by a work crew and more than 1 moving vehicle, MCL 257.629d(b), or "conducted by a work crew and 1 moving or stationary vehicle exhibiting a rotating beacon or strobe light," MCL 257.629d(c). There is no contention in this case that either of the latter two subsections applies in this case.

[6] MCL 257.628 governs the procedures for permanently modifying a posted speed limit for traffic control purposes and does not specifically govern work zones.

[7] The record before us reflects that, as is required by MCL 257.629d(a), there was a "Work Zone Begins" sign at the location where the work zone began. While the record does not specifically

But because MCL 257.627(6) applies here, and because MCL 257.627(6) (unlike MCL 257.627(2)) does not include the prefatory language, "Except as provided in subsection (1) . . . ," MCL 257.627(1) does not apply in this context.[8] Therefore, in this context, in which the incident occurred in a "work zone" as defined in MCL 257.629d(a), the driver of defendant's bus was entitled to rely upon the posted speed limit as determined by the applicable governing authority, and did not have the further obligation of MCL 257.627(1) to ascertain what was a "reasonable and proper speed" for the road construction conditions.

Indeed, this would seem to make sense from the Legislature's policy-making perspective. Unlike in other contexts (such as fog, rain or snow, ice, or heavy traffic), where no governing authority realistically could determine in advance what a "reasonable and proper speed" would be for the particular conditions a driver might encounter, a governing authority could make such an advance determination in a road construction or "work zone" setting. And that is precisely the obligation that the Legislature imposed upon the "state transportation department, a county road commission, or a local authority" in MCL 257.627(6), i.e., to determine, "based on accepted engineering practice," what is the appropriate speed limit for a particular work zone, and to post speed limit signs in the work zone in accordance with that determination.

In this case, 35-mile-per-hour speed limit signs were posted in the work zone.[9] It is undisputed that the bus driver was driving within that posted speed limit. Because the work zone is governed by MCL 257.627(6), the bus driver was entitled to rely on the posted speed limit. Indeed, in describing a driver's obligations in a "work zone," MCL 257.627(6) states, "A person shall not exceed a speed limit established under this section or a speed limit established under

---

reflect whether there was an "End Road Work" sign where the work zone ended, plaintiff acknowledges that the incident occurred in a "work zone" and, given the inapplicability of other portions of the statutory "work zone" definition, effectively concedes the applicability of MCL 257.629d(a). What plaintiff argues is that, notwithstanding the applicability of MCL 257.629d(a) and MCL 257.627(6), the additional obligations of MCL 257.627(1) still apply.

[8] I fully appreciate that under the format of MCL 257.627, the text of MCL 257.627(1) appears first, and that plaintiff's position is therefore that MCL 257.627(1) applies in all factual settings, even those involving "work zones" that are subject to MCL 257.627(6). However, to read MCL 257.627 in that fashion would render nugatory the "Except as provided in subsection (1) . . . " language that is found in MCL 257.627(2). Such a construction of the statute contravenes our rules of statutory interpretation. See *GMA LLC v Dep't of Treasury*, 286 Mich App 365, 373; 781 NW2d 310 (2009), quoting *Baker v Gen Motors Corp*, 409 Mich 639, 665; 297 NW2d 387 (1980) ("Every word of a statute should be given meaning and no word should be treated as surplusage or rendered nugatory if at all possible.")

[9] MCL 257.627(6) provides for a maximum speed limit of "45 miles per hour unless a different speed limit is determined for that work zone by the state transportation department, a county road commission, or a local authority, based on accepted engineering practice."

-4-

section 628."[10]  And because MCL 257.627(1) does not apply in this work zone context, the bus driver had no further obligation to assess the speed that was appropriate for the road construction conditions.

Accordingly, I would hold that plaintiff did not carry her burden of demonstrating a genuine issue of material fact regarding the bus driver's allegedly excessive speed (and therefore regarding her alleged negligence).  As a result, the motor vehicle exception to governmental immunity, MCL 691.1405 (which allows for liability in the event that a motor vehicle owned by a governmental agency is operated negligently), did not apply, and the trial court erred by concluding otherwise.  So, in my view, does the majority.

For these reasons, I would reverse the trial court's denial of defendant's motion for summary disposition and would remand for the entry of an order granting summary disposition in favor of defendant under MCR 2.116(C)(7).[11]

/s/ Mark T. Boonstra

---

[10] As noted, MCL 257.628 does not apply here.  See Note 6 of this opinion.

[11] My conclusion is dictated by my interpretation of the plain language of the statutes, and by my obligation not to interfere with the policy determinations of the Legislature.  I do not discount whether plaintiff was injured, and I make no judgment about whether the bus was traveling at a speed that was in fact too fast for the conditions of the work zone or whether plaintiff may have an actionable claim.  I am not in a position to determine, for example, whether "the state transportation department, a county road commission, or a local authority," MCL 257.627(6), properly determined the speed limit for the work zone.  But plaintiff's remedy, if any, for any negligence or errors in that regard lie elsewhere, not against this defendant.