*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KAREN J. BONZHEIM,

        Petitioner-Appellant,

v

CITY OF WYOMING,

        Respondent-Appellee.

UNPUBLISHED
May 19, 2022

No. 357452
Tax Tribunal
LC No. 20-003539-TT

Before: LETICA, P.J., and MARKEY and O'BRIEN, JJ.

PER CURIAM.

Petitioner appeals as of right the Tax Tribunal's final opinion and judgment denying her the poverty exemption for the 2020 property taxes on her home located in Wyoming, Michigan. We reverse.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On June 6, 2017, the State Tax Commission (STC) issued a bulletin[1] addressing the application of MCL 211.7u, the homestead property tax exemption for persons unable to pay because of poverty. The bulletin instructed that local units were required to adopt guidelines used to approve or deny a poverty exemption that included consideration of total household income as well as an asset test. It advised of items to be designated as income that they included "[r]egular payments from social security."[2] When addressing the asset test, the bulletin stated:

---

[1] This bulletin was identified as Bulletin 6 of 2017, issued June 6, 2017, and it rescinded Bullet 5 of 1995, Bulletin 7 of 2010, and Bullet 5 of 2012.

[2] The parties do not dispute that petitioner's Social Security benefits may be included in the calculation of income for purposes of determining the poverty exemption. The issue involves the inclusion of petitioner's receipt of food stamps as an asset for purposes of calculating the poverty exemption involving petitioner's household of two, consisting of petitioner and her brother.

The purpose of an asset test is to determine the resources available: cash, fixed assets or other property that could be converted to cash and used to pay property taxes in the year the poverty exemption is filed. The local unit should require that claimants provide a list of all assets when applying for a poverty exemption. Following is a list of assets that may be included in the annual guidelines.

• A second home, land, vehicles

• Recreational vehicles such as campers, motor-homes, boats and ATV[]s

• Buildings other than the residence

• Jewelry, antiques, artworks

• Equipment, other personal property of value

• Bank accounts (over a specified amount), stocks

• Money received from the sale of property such as stocks, bonds, a house or car (unless a person is in the business of selling such property)

• Withdrawals of bank deposits and borrowed money

• Gifts, loans, lump-sum inheritances and one-time insurance payments

• Food or housing received in lieu of wages and the value of food and fuel produced and consumed on farms

• *Federal non-cash benefit programs such as Medicare, Medicaid, food stamps, and school lunches*. [Emphasis added.]

On November 18, 2019, the Wyoming City Council resolved to adopt a local poverty exemption. The resolution reflects that, among other things, an applicant for the exemption must file with the City Assessor:

A sworn statement that the fair market value of the combined assets of all persons residing in the residence for which the exemption is sought do not exceed the following guidelines. Assets include but are not limited to, real estate other than the principal residence, personal property, motor vehicles excluding the cash value of one automobile used for routine transportation needs, recreational vehicles and equipment, certificates of deposit, savings accounts, checking accounts, stocks, bonds, life insurance, retirement funds, and any other tangible or intangible person[al] property or thing of value.

i. $2,500 for the claimant, adjusted annually in accordance with cost of living adjustments based on the Inflation Rate Multiplier annually calculated by the Michigan State Tax Commission, and

ii. $6,000 for the household seeking exemption, adjusted annually in accordance with the cost of living adjustments based on the Inflation Rate Multiplier annually calculated by the Michigan State Tax Commission.

With the assistance of legal counsel, petitioner, a Wyoming resident, applied for the poverty exemption for the 2020 tax year. According to her application, petitioner owned a home in Wyoming and utilized this home as her primary residence, where she resided as a single household with her brother, David Neely. Petitioner delineated a $12,986 annual income, with $11,743 in annual expenses. Respondent's application includes an income worksheet that apprises applicants of the following items that may be included as income:

• Regular contributions from persons not living in the residence.

• Net receipts from non-farm or farm self-employment (receipts from a person's own business, professional enterprise, or partnership, after business expense deductions).

• *Regular payments from social security, railroad retirement, unemployment, workers compensation, veteran's payments, public assistance, Supplemental Security income (SSI).*

• Alimony, child support, military family allotments, or other regular support from an absent family member or someone not living in the household.

• Alimony, child support, military family allotments.

• Private and governmental retirement and disability pensions, regular insurance, annuity payments.

• College or university scholarships, grants, fellowships, and assistantships.

• Dividends, interest, and net income from rentals, royalties, estates, trusts, gambling or lottery winnings. [Underlining in original, italics added.]

To calculate her income on this form, petitioner reported $9,674 in Social Security benefits and $3,312 in food stamp benefits.

On the asset worksheet, petitioner delineated no items. She recorded individual and household assets of $0. However, respondent's worksheet indicates that the following, but not limited itemization, may be considered assets:

• A second home, rental property, land, etc.

• Vehicles

• Recreational vehicles such as campers, motor-homes, boats and ATV[]s

• Buildings other than the residence

• Jewelry, antiques, artwork.

• Equipment, tools, and other personal property of value

• Bank accounts, stocks.

• Money received from the sale of property such as stocks, bonds, a house or car

• Withdrawals of bank deposits and borrowed money

• Gifts, loans, lump-sum inheritances and one-time insurance payments

• Food or housing received in lieu of wages and the value of food and fuel produced and consumed on farms

• *Federal non-cash benefit programs such as Medicare, Medicaid, food stamps, and school lunches*. [Emphasis added.]

Thus, respondent's application listed food stamps as an asset for purpose of calculating the poverty exemption. However, petitioner purportedly did not identify any food assistance benefits as assets because, when she applied, her Bridge card[3] account had a balance at or near zero.[4]

Attached to her application, petitioner submitted a Social Security Benefit Statement, which reflects that she received $9,674 in benefits in 2019. She provided documentation that her Social Security benefit amount for 2020 would be $819 a month or $9,828 annualized. Petitioner also presented a "Notice of Case Action" from the Department of Health and Human Services (DHHS), which reflected that her monthly food stamp benefits for the period January 1 to April 30, 2020, *for herself and Neely*, was $276 a month or $3,312 annualized. This notice characterized the benefit issued to a "household" with a size of "2."

The Wyoming Board of Review reviewed petitioner's application at its July 2020 meeting. The board members completed a review affidavit. The affidavit concluded that petitioner passed the "income test," having less income than the limit for the poverty exemption, $16,910. However, it was also concluded that petitioner failed the "asset test," having claimed $3,312 in assets when the asset limit for the exemption was $6,000.[5] On July 23, 2020, the Wyoming Assessor's Office sent petitioner a letter informing her that her exemption application was denied because of a "[f]ailed asset test."

On August 25, 2020, petitioner appealed to the Small Claims Division of the Tax Tribunal. On March 12, 2021, the Administrative Law Judge (ALJ) issued a proposed opinion and judgment,

---

[3] A Bridge card is a debit card that replaced paper food stamps and checks. See < https://www.michigan.gov/mdhhs/assistance-programs/food/payment> (accessed May 2, 2022).

[4] In her brief on appeal, petitioner gave this explanation for why food stamps were not included in her asset calculation. Nonetheless, petitioner disclosed the receipt of food stamps in her income calculation and provided documentary evidence of her receipt of food stamps in her poverty exemption submission.

[5] Respondent's poverty exemption summary sheet listed petitioner as the sole recipient of food stamps, classified the food stamps as an asset, and valued the asset at $3,312. The summary then noted that the assets claimed were $3,312, and the asset limit was $6,000. Thus, despite the summary sheet identifying petitioner's assets as under the asset limit, respondent concluded that petitioner failed the asset test.

recommending that petitioner was not entitled to the property exemption for the 2020 tax year. The proposed opinion and judgment contained the following findings of fact:

1. The subject property is located at 4531 Pinehurst Avenue SW, Wyoming, MI in Kent County.

2. The subject property is classified as residential real.

3. Petitioner owned the subject property for the tax year at issue.

4. The subject property had a principal residence exemption (PRE) of 100% for the tax year at issue.

5. Petitioner submitted an application requesting the Poverty Exemption on July 7, 2020.

6. The number of persons residing in the subject household for the tax year at issue was two (2).

7. The "federal poverty guidelines" or alternative guidelines adopted by Respondent for the subject household for the tax year at issue provide for an income level of $16,910 for a household of two (2).

8. Petitioner's annual household income pursuant to MCL 211.7u for the year at issue is $9,672 based on her receipt of $806 in monthly Social Security income.

9. Respondent has adopted an "asset test" that provides for the maximum value of assets for the applicant of $2,500 and for the household of $6,000.

10. The value of the applicant assets for Petitioner is $3,312 based on her receipt of food stamps in the amount of $276 per month.

The ALJ summarized petitioner's argument and rejected it, stating:

> Here, Petitioner claims that she qualifies for the poverty exemption but was denied because she failed Respondent's asset test. Petitioner also claims that (i) she has zero assets and reported her monthly food stamps in the amount of $276 as income as required by other jurisdictions, (ii) she recently declared bankruptcy and listed zero assets on her bankruptcy petition, and (iii) she disagrees with Respondent's position on food stamps, as an asset is what you have available and not what you may receive. Although Petitioner submitted documentation in support of her claims, Petitioner failed to properly complete her application, as food stamps are not, despite Petitioner's claim, considered income.

According to the ALJ, the applicable STC bulletin provided that assets could include federal noncash benefits, such as food stamps. Therefore, the ALJ concluded that petitioner was not entitled to the poverty exemption because her "food stamp assets of $3,312 exceeded the threshold established by Respondents for applicants only [sic] of $2,500."

-5-

On April 2, 2021, petitioner filed three exceptions to the proposed order. Petitioner noted that MCL 211.7u did not define income or asset. She alleged that respondent declined to include food assistance in its list of assets when it approved a resolution adopting a poverty exemption policy and, therefore, could not consider food assistance as an asset. Additionally, petitioner submitted that only food assistance actually accessible by an applicant could constitute an asset. Lastly, petitioner contended that food assistance was not an asset because it could not be used to pay property taxes.

On June 8, 2021, the Tax Tribunal adopted the proposed order and judgment [POJ] of the ALJ, reasoning as follows:

> The Tribunal has considered the exceptions, response, and the case file and finds that the [ALJ] properly considered the testimony and evidence submitted in the rendering of the POJ. More specifically, Petitioner argues that food assistance should not be treated as an asset because it cannot be used to pay property taxes. While the food assistance itself cannot be used to pay property taxes, the food assistance is meant to relieve a burden on Petitioner so that the money that might have otherwise been spent on food could be used to pay property taxes. While Petitioner argues that food assistance should be considered income and not an asset and that neither term is defined in the statute, it is noted that food assistance, i.e., food stamps, are specifically listed as a noncash benefit that is not income under the Census Bureau's and STC's poverty guidelines. Petitioner also argues that only the actual amount of food assistance retained is an asset. If this was the intention of the STC in its bulletins, it would not have listed food stamps as it is unlikely that anyone that qualifies for them would retain them rather than use them. Petitioner also states that Respondent's revised poverty exemption policy declined to include food assistance in its list of assets. Although Respondent's Resolution No. 26545, approved on November 18, 2019, does not specifically list food assistance or food stamps in its list of assets, it does state "[a]ssets include but are not limited to, . . . and any other tangible or intangible person[al] property or thing of value." It is clear to the Tribunal that food assistance could easily be considered a thing of value to be included. If it was Respondent's intention to not include food assistance as an asset, they would not have specifically listed food stamps on their asset worksheet as part of the poverty exemption application. Although Petitioner did not fill out the asset worksheet for either applicant only or household, the testimony indicates the food assistance received was issued to the applicant and therefore, exceeds Respondent's asset test for an individual applicant.

> Given the above, Petitioner has failed to show good cause to justify the modifying of the POJ or the granting of a rehearing.

From this decision, petitioner appeals.

## II. STANDARDS OF REVIEW

If the facts are undisputed and fraud is not alleged, appellate review of the Tax Tribunal's decision is limited to whether the tribunal committed an error of law or adopted a wrong legal

principle. *Honigman Miller Schwartz & Cohn LLP v City of Detroit*, 505 Mich 284, 294; 952 NW2d 358 (2020). The Tax Tribunal's factual findings are conclusive if supported by competent, material, and substantial evidence on the whole record. *Ferrero v Walton Twp*, 295 Mich App 476, 478-479; 813 NW2d 368 (2012).

This Court reviews de novo the interpretation and application of tax statutes. *Andersons Albion Ethanol, LLC v Dep't of Treasury*, 317 Mich App 208, 212; 893 NW2d 642 (2016). When interpreting a statute, the courts must give effect to the intent of the Legislature. *Id*. "Where the statutory language is unambiguous, the plain meaning reflects the Legislature's intent and the statute must be applied as written." *Honigman Miller Schwartz & Cohn LLP*, 505 Mich at 294. "Each word and phrase in a statute must be assigned such meanings as are in harmony with the whole of the statute, construed in light of history and common sense." *Id*. (quotation and citation omitted). Generally, the ordinary and accepted meaning of the mandatory term "shall," and the permissive word "may" should be employed by the courts. *Browder v Int'l Fidelity Ins Co*, 413 Mich 603, 612; 321 NW2d 668 (1982); *Cheesman v Williams*, 311 Mich App 147, 151; 874 NW2d 385 (2015). "When a term is not defined in the statute, it is appropriate to consult dictionary definitions to determine the meaning of the term." *STC, Inc v Dep't of Treasury*, 257 Mich App 528, 533; 669 NW2d 594 (2003). "An agency's interpretation of a statute is not binding and may not conflict with the plain meaning of the statute, but it is entitled to respectful consideration." *Andersons Albion Ethanol, LLC*, 317 Mich App at 213. Despite the agency's interpretation, "the court's ultimate concern is a proper construction of the plain language of the statute." *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 108; 754 NW2d 259 (2008). Therefore, the agency's interpretation does not bind the courts, and "it cannot conflict with the Legislature's intent as expressed in the language of the statute at issue." *Id*. at 103.

Tax exemptions are disfavored and strictly construed in favor of the taxing authority. *Spranger v City of Warren*, 308 Mich App 477, 479; 865 NW2d 52 (2014); *GMAC, LLC v Dep't of Treasury*, 286 Mich App 365, 374-375; 781 NW2d 310 (2009). The party claiming the right to the exemption has the burden of proof. *GMAC, LLC*, 286 Mich App at 375. A petitioner possesses a burden to prove by a preponderance of the evidence that she is entitled to the requested exemption. *Spranger*, 308 Mich App at 479. The Legislature's intent to grant an exemption will never be implied from language which will admit of any other reasonable construction. *GMAC, LLC*, 286 Mich App at 375 (quotation marks and citation omitted). That is, taxation is the rule, and exemption is the exception. *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

Petitioner alleges that the Tax Tribunal erred in concluding that food stamps constitute an asset for purposes of calculating the poverty exemption. We agree.

The poverty exemption from property taxes on a principal residence is governed by § 7u of the General Property Tax Act, MCL 211.1 *et seq*. For the 2020 tax year, the poverty exemption, MCL 211.7u(1),[6] provided as follows:

> The principal residence of persons who, in the judgment of the supervisor and board of review, by reason of poverty, are unable to contribute toward the public charges is eligible for exemption in whole or in part from taxation under this act. This section does not apply to the property of a corporation.

MCL 211.7u(4), provided as follows:

> The governing body of the local assessing unit shall determine and make available to the public the policy and guidelines the local assessing unit uses for the granting of exemptions under this section. The guidelines shall include but not be limited to the specific income and asset levels of the claimant and total household income and assets.

That is, the local assessing unit must develop guidelines for granting a poverty exemption. The local guidelines cannot impose stricter requirements than the federal poverty guidelines. MCL 211.7u(2)(e). Additionally, the board of review shall follow the policy and guidelines created by the local assessing unit to determine whether an exemption is warranted unless the board determines there are substantial and compelling reasons to deviate from the policy and guidelines. MCL 211.7u(5); *Spranger*, 308 Mich App at 479-480.

Although the local assessing unit was required to determine policy and guidelines for granting the poverty exemption, the guidelines must consider income and assets levels of the claimant as well as the household. MCL 211.7u(4). However, MCL 211.7u(4) does not define "income" or "assets." Thus, we may resort to dictionary definitions to determine the meaning of the terms. "Asset" is defined as "sufficient property to pay debts and legacies," "the entire property of a person . . . applicable or subject to the payment of debts," or "an item of value owned." Merriam-Webster's Collegiate Dictionary (11th ed). "Income" is defined as "a coming in," "a gain or recurrent benefit usu[ally] measured in money that derives from capital or labor," or "the amount of such gain received in a period of time." *Id*.

Applying the dictionary definition, respondent's characterization of food stamps as an "asset" is contrary to the defined term. The Supplemental Nutrition Assistance Program (SNAP) was enacted to alleviate hunger and malnutrition by permitting "low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation." 7 USC 2011. SNAP participation is "limited to those households whose incomes and other financial resources, held singly or in joint ownership,

---

[6] MCL 211.7u was amended by 2020 PA 253, effective December 22, 2020. Because petitioner applied for the 2020 poverty exemption prior to the amendment, we consider the statutory language in effect at the time of her request, recognizing that the amendment did not alter the substantive content at issue in this appeal.

are determined to be a substantial limiting factor in permitting them to obtain a more nutritious diet." 7 USC 2014(a).

> SNAP operates as a federally funded, state administered program under which state agencies request and distribute monthly allotments for all eligible households in their state, as defined by the FNA [Food and Nutrition Act of 2008]. 7 USC § 2013(a). Households that receive SNAP allotments then redeem these allotments to purchase food at qualifying retail stores. [*Gilliam v United States Dep't of Agriculture*, 486 F Supp 3d 856, 862 (ED Pa, 2020).[7]]

The United States Secretary of Agriculture established eligibility standards for SNAP, including income and asset limits. 7 USC 2013(b). States must abide by these standards. *Id*. In Michigan, the DHHS administers the food stamp program. *Shahid v Dep't of Health and Human Servs*, 333 Mich App 267, 270; 963 NW2d 638 (2020). SNAP benefits can only be used to purchase food for the household or items that will produce food for the household such as seeds or plants. SNAP benefits cannot be used to purchase non-food items such as pet foods, cleaning or paper products, and hygiene items.[8] The unauthorized use, transfer, acquisition, alteration, or possession of SNAP benefits constitutes a program violation subject to felony prosecution, imprisonment, and fines. 7 USC 2024(b).

As noted, the term "asset" is defined as "sufficient property to pay debts and legacies," "the entire property of a person . . . applicable or subject to the payment of debts," or "an item of value owned." Merriam-Webster's Collegiate Dictionary (11th ed). But the food stamp program only permits expenditures for food items, and even supplies necessary to maintain a household, such as cleaning supplies, could not be purchased with food stamps. Additionally, food stamps cannot be leveraged to pay debts and legacies or do not constitute an item owned. Thus, the Tax Tribunal's characterization of food stamps as an asset for purposes of determining the poverty exemption is contrary to the plain meaning of the term "asset."[9]

---

[7] Although lower federal court decisions are not binding on state courts, they may be persuasive. See *Abela v GMC*, 469 Mich 603, 606-607; 677 NW2d 325 (2004).

[8] <https://www.fns.usda.gov/snap/eligible-food-items> (accessed May 2, 2022).

[9] Although our rules of statutory construction instruct that we may consult a dictionary definition to ascertain legislative intent, we note that our interpretation is consistent with DHHS policy. The DHHS defines "asset" as "[c]ash, any other personal property and real property." Michigan Department of Health and Human Services, *Bridges Policy Glossary*, BPG 2022-001 (January 1, 2022), 6. It defines "income" as "[b]enefits or payments measured in money." *Id*. at 34. "An asset must be available to be countable." Michigan Department of Health and Human Services, *Bridges Eligibility Manual 400*, BEM 2022-001 (January 1, 2022), 10. An asset is available if the person "has the legal right to use or dispose of the asset." *Id*. When assets are held in accounts, such as money, the lowest account balance for the month is used to determine eligibility for the food stamps. *Id*. at 16. "Funds cannot be counted as both income and as assets in the same month." *Bridges Eligibility Manual 400*, 7.

Our interpretation conflicts with the examples of "assets" proffered in the STC bulletin. Moreover, respondent's resolution creating a poverty exemption defined assets as:

> Assets include but are not limited to, real estate other than the principal residence, personal property, motor vehicles excluding the cash value of one automobile used for routine transportation needs, recreational vehicles and equipment, certificates of deposit, savings accounts, checking accounts, stocks, bonds, life insurance, retirement funds, and any other tangible or intangible person[al] property or thing of value.

The resolution further identifies asset limits of $2,500 for a claimant and $6,000 for a household for the first year, to be adjusted on annual basis.

However, the STC bulletin is not binding upon this Court. *Ferrero*, 295 Mich App at 479. Furthermore, administrative guidance materials are not promulgated rules and do not have the force of law. *Danse Corp v City of Madison Hts*, 466 Mich 175, 181; 644 NW2d 721 (2002). Accordingly, agency materials cannot supplant the legislative intent as expressed in the plain language of the statute. *Andersons Albion Ethanol, LLC*, 317 Mich App at 213. In the absence of statutorily defined terms, we resort to dictionary definitions, *STC, Inc*, 257 Mich App at 533, and do not defer to agency interpretations that conflict with the Legislature's intent, *In re Complaint of Rovas Against SBC Mich*, 482 Mich at 103, 108. Accordingly, we conclude that the STC and Tax Tribunal's determination that food stamps constitute an asset was legally erroneous. See *Ferrero*, 295 Mich App at 478-479.

Furthermore, the STC bulletin and respondent's asset list violate the interpretative doctrine *ejusdem generis*. "Under the statutory construction doctrine known as ejusdem generis, where a general term follows a series of specific terms, the general term is interpreted "to include only things of the same kind, class, character, or nature as those specifically enumerated." *Neal v Wilkes*, 470 Mich 661, 669; 685 NW2d 648 (2004) (quotation marks and citation omitted). The STC bulletin provides that the purpose of the asset test was to determine available resources such as cash, fixed assets, or other property that could be converted to cash to pay property taxes. Commensurate with that purpose, the STC then delineates items that permissively *may* be included as assets. This listing includes tangible items or items of monetary value such as homes, buildings, vehicles, jewelry, bank accounts, loans, insurance payments, inheritances, and items received in lieu of wages. But the last item referring to federal non-cash benefits such as food stamps is not of the same kind as the other examples proffered by the STC. Food stamps cannot be sold or leveraged contrary to the terms of the program because of criminal penalties and fines. Accordingly, respondent[10] erred in determining that it could include food stamps as an asset for purposes of calculating the poverty exemption. The Tax Tribunal's affirmance of respondent's

---

[10] Respondent submits that MCL 211.7u(9) was amended by 2020 PA 253 to require the STC to issue a bulletin pertaining to the poverty exemption. However, this statutory amendment required a bulletin issue to address "the development and implementation of an audit program." The current language of MCL 211.7u(9) does not alter the fact that STC bulletins are not given force of law. *Ferrero*, 295 Mich App at 479.

decision constituted an error of law.  In the absence of a legislative definition of the term "asset," the dictionary definition of the term "asset" should have been consulted, and the reliance on the nonbinding STC bulletin was erroneous.[11]

Reversed.


/s/ Anica Letica
/s/ Jane E. Markey
/s/ Colleen A. O'Brien

---

[11] In light of our determination, we need not address petitioner's remaining arguments.  For purposes of completeness, we note that respondent and the Tax Tribunal erred in concluding that petitioner failed the asset test even if food stamps were considered as an asset.  Respondent acknowledged that petitioner received $3,312 in food stamps, and the asset limit for the exemption was $6,000.  Indeed, petitioner submitted documentation evidence that the $3,312 in food stamps covered her "household size" of two, to include petitioner and her brother.  Thus, petitioner was subject to the household limit of $6,000, not $2,500 for an individual applicant.