*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CANNARBOR, INC.,

Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

Defendant-Appellee.

UNPUBLISHED
March 25, 2025
1:28 PM
APPROVED FOR
PUBLICATION
May 7, 2025
10:11 AM

No. 368901
Court of Claims
LC No. 22-000217-MT

Before: CAMERON, P.J., and GARRETT and MARIANI, JJ.

CAMERON, P.J.

Plaintiff appeals as of right the Court of Claims order granting summary disposition in favor of defendant under MCR 2.116(C)(8) (failure to state a claim). We affirm.

## I. STATUTORY HISTORY AND FRAMEWORK

This case concerns the sales-tax implications for medical marijuana providers. In order to understand the facts in this case, it is helpful to first examine the statutory framework. "In 2008, the voters of Michigan passed into law a ballot initiative now codified as the Michigan Medical Marihuana[1] Act (MMMA), MCL 333.26421 *et seq.*" *People v Hartwick*, 498 Mich 192, 198; 870 NW2d 37 (2015).[2] The MMMA protected certain medical-marijuana-related conduct from

---

[1] While the relevant statutes spell the term "marihuana," we will use the spelling "marijuana" unless quoting the statutes or other sources using this spelling.

[2] Since 2017, various provisions of the MMMA and the Medical Marihuana Facilities Licensing Act (MMFLA), MCL 333.2701 *et seq.*, have been recodified or modified in minor ways that have no bearing on this Court's analysis. For simplicity, the current versions of the statutes will be cited.

prosecution that would otherwise have been criminal. *Id*. at 209. The MMMA defines a "primary caregiver" as:

> [A] person who is at least 21 years old and who has agreed to assist with a patient's medical use of marihuana and who has not been convicted of any felony within the past 10 years and has never been convicted of a felony involving illegal drugs or a felony that is an assaultive crime as defined in section 9a of chapter X of the code of criminal procedure, 1927 PA 175, MCL 770.9a. [MCL 333.26423(*l*).]

It defines a "qualifying patient" or "patient" as "a person who has been diagnosed by a physician as having a debilitating medical condition." MCL 333.26423(m).

The MMMA's grant of immunity to primary caregivers is found in MCL 333.26424, which states, in relevant part:

> (b) A primary caregiver who has been issued and possesses a registry identification card is not subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for assisting a qualifying patient to whom he or she is connected through the department's registration process with the medical use of marihuana in accordance with this act. . . .

> * * *

> (f) A registered primary caregiver may receive compensation for costs associated with assisting a registered qualifying patient in the medical use of marihuana. Any such compensation does not constitute the sale of controlled substances.

Under MCL 333.26426(d), "each qualifying patient can have not more than 1 primary caregiver, and a primary caregiver may assist not more than 5 qualifying patients with their medical use of marihuana."

Adoption of the MMMA led the Legislature to enact the Medical Marihuana Facilities Licensing Act (MMFLA), MCL 333.2701 *et seq*., in 2016, "for licensing and regulating medical marijuana facilities." *Cary Investments, LLC v Mount Pleasant*, 342 Mich App 304, 316 n 1; 994 NW2d 802 (2022). The MMFLA defined a "registered primary caregiver" and a "registered qualifying patient" by reference to the MMMA. MCL 333.27102(x) and (y). It defined a "provisioning center" as:

> [A] licensee that is a commercial entity located in this state that purchases marihuana from a grower or processor and sells, supplies, or provides marihuana to registered qualifying patients, directly or through the patients' registered primary caregivers. Provisioning center includes any commercial property where marihuana is sold at retail to registered qualifying patients or registered primary caregivers. A noncommercial location used by a registered primary caregiver to assist a qualifying patient connected to the caregiver through the department's

-2-

marihuana registration process in accordance with the Michigan Medical Marihuana Act is not a provisioning center for purposes of this act. [MCL 333.27102(w).]

The MMFLA established that certain activities were protected from prosecution and other sanctions "if performed under a state operating license within the scope of that license and in accord with this act," including "[r]eceiving or providing compensation for products or services." MCL 333.27201(2)(h).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a medical marijuana provisioning center in Ann Arbor. In 2017, plaintiff sold marijuana at retail but did not collect sales tax. Plaintiff asserts on appeal that it relied on a 2011 letter from then-Deputy Treasurer Glenn White ("the 2011 letter") which stated that, while "[i]n general, the sale or use of marihuana is taxable[,]" the MMMA "specifically states that the transaction between a caregiver and a patient is not a sale of the medical marihuana." As such, the 2011 letter concluded, the MMMA "re-characterizes what might otherwise be a taxable sale of tangible personal property as a non-taxable caregiver service." Furthermore, the 2011 letter noted that the MMMA "does not provide for state-regulated retail stores or dispensaries." The 2011 letter was addressed to "James Campbell, CPA," plaintiff's accountant, but made no specific mention of plaintiff.

In January 2018, the Department of Treasury issued Revenue Administrative Bulletin (RAB) 2018-2. It states, in pertinent part:

> The retail sales of marihuana and marihuana-derived products by a provisioning center are subject to sales tax. The sale of any other tangible personal property by a provisioning center or other person that is not otherwise exempt from sales or use tax is also subject to tax.

> A registered primary caregiver (caregiver) under the MMMA "may receive compensation for costs associated with assisting a registered qualifying patient in the medical use of marihuana. Any such compensation does not constitute the sale of controlled substances." Therefore, any consideration received by a caregiver from a qualifying patient (patient) for marihuana or marihuana-derived products in compliance with the MMMA is a non-taxable service and not subject to sales tax.

As a result of RAB 2018-2, plaintiff began collecting and paying sales tax in 2018.

The Treasury audited plaintiff and assessed a tax deficiency for 2017. Plaintiff filed suit, asserting that it was not required to collect or remit sales tax from its customers during that year. The Treasury moved for summary disposition under MCR 2.116(C)(8) (failure to state a claim). Plaintiff also moved for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). The Court of Claims granted the Treasury's motion and denied plaintiff's motion. Plaintiff now appeals.

## III. STANDARDS OF REVIEW

A grant or denial of summary disposition is reviewed de novo. *McMaster v DTE Energy Co*, 509 Mich 423, 431; 984 NW2d 91 (2022). "Motions for summary disposition brought under MCR 2.116(C)(8) test the legal sufficiency of a claim based on the factual allegations in the complaint" and "should be granted only when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Miller v Dep't of Corrections*, 513 Mich 125, 132; 15 NW3d 129 (2024) (quotation marks, emphasis, and citations omitted). Under MCR 2.116(C)(8), the court must accept as true any factual allegations, but "[m]ere conclusory statements and statements of the pleader's conclusions of law are insufficient to state a cause of action." *Masrur v Regents of Univ of Mich*, 344 Mich App 102, 109-110; 999 NW2d 55 (2022). The legal significance of a fact is a question of law. *Philips v Mirac, Inc*, 470 Mich 415, 428; 685 NW2d 174 (2004). "The interpretation of statutes and court rules is also a question of law subject to de novo review, as is the application of legal doctrines[.]" *Estes v Titus*, 481 Mich 573, 579-580; 751 NW2d 493 (2008) (citation omitted).

## IV. TAX TREATMENT UNDER THE MMMA AND MMFLA

Plaintiff first argues the Court of Claims erred when it held that the MMMA and MMFLA, in conjunction with the General Sales Tax Act (GSTA), MCL 205.51 *et seq.*, make clear that plaintiff was required to pay sales tax. We disagree.

Plaintiff argues that the Treasury and trial court misconstrued MCL 333.26424(f) to be a tax exemption for caregivers when it is, in fact, a decriminalization provision. According to plaintiff, there are no exceptions from, or other provisions pertaining to, sales tax under either the MMMA or MMFLA, and, because the statutes are silent on the issue, it is necessary to apply the test set forth in *Catalina Mktg Sales Corp v Dep't of Treasury*, 470 Mich 13, 19; 678 NW2d 619 (2004), to determine whether plaintiff is liable for such tax. We do not find this argument convincing.

Agency interpretations of statutes are generally entitled to "respectful consideration" and should not be overruled without "cogent reasons." *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103; 754 NW2d 259 (2008). Here, the Treasury reasoned that, under the GSTA, MMMA, and MMFLA, "[t]he retail sales of marihuana and marihuana-derived products by a provisioning center are subject to sales tax[,]" but that "[a]ny such compensation [received by a primary caregiver as a cost of assisting a patient under MCL 333.26424(f)] does not constitute the sale of controlled substances[,]" and is thus "a non-taxable service and not subject to sales tax." We see no cogent reason to overrule this interpretation. *In re Complaint of Rovas*, 482 Mich at 103.

MCL 333.26424(f) allows primary caregivers to recoup "costs associated with assisting" patients. The term "assisting" is not defined in the MMMA, but *Merriam-Webster's Collegiate Dictionary* (11th ed) defines it as "to give support or aid." The term "service" ordinarily "has a rather broad and general meaning" which generally includes "any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed." *Smith v Allendale Mut Ins Co*, 410 Mich 685, 717 n 25; 303 NW2d 702 (1981) (emphasis, quotation marks, and citation omitted). Unlike primary caregivers, provisioning centers are "commercial entit[ies] located in this state that purchase[] marihuana from a grower or processor and sell[], suppl[y], or provide[] marihuana to registered qualifying patients" and "include[] any

-4-

commercial property where marihuana is sold at retail to registered qualifying patients or registered primary caregivers." MCL 333.27102(w). Sales at retail are subject to taxation. *Catalina Mktg*, 470 Mich at 14; MCL 205.52(1). Thus, the Legislature has indicated that primary caregivers provide a nontaxable service, while provisioning centers do not. *Catalina Mktg*, 470 Mich at 19.

Further evidence of this intent can be found in the Legislature's use of the word "cost." The MMMA does not define the term "cost." As such, the Court of Claims properly looked to the dictionary definition of the term for its plain and ordinary meaning. See *Champine v Dep't of Transp*, 509 Mich 447, 453; 983 NW2d 741 (2022). As the Court of Claims explained:

> The dictionary definition of "cost" includes, in relevant part, "the amount or equivalent paid or charged for something[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed). Unlike a "cost," a "profit" is defined to include "a valuable return," and "the excess of returns over expenditures in a transaction or series of transactions; *esp*: the excess of the selling price of goods over their cost[.]" *Id*.

Plaintiff also argues primary caregivers "can charge whatever price they choose," and that, therefore, the MMMA "does not, in reality or intent, constrain caregivers to only recover out-of-pocket costs." Plaintiff's argument misses the mark. The statute permits primary caregivers to recoup costs—nothing more. Whether primary caregivers increase the prices they charge to make an illegal, non-taxable profit does not alter the nature of the language in the statute itself. Unlike primary caregivers, who are only permitted to recoup costs, provisioning centers may earn a profit by selling marijuana "at retail[,]" MCL 333.27102(w), and, again, sales "at retail" are subject to taxation, MCL 205.52(1).

We now turn to whether the MMMA's tax-exemption provision for primary caregivers applies to plaintiff. The GSTA "imposes a 6% tax on the sale of all tangible personal property in Michigan[.]" *Andrie Inc v Dep't of Treasury*, 496 Mich 161, 168; 853 NW2d 310 (2014). The GSTA defines "sale at retail" or "retail sale" as "a sale, lease, or rental of tangible personal property for any purpose other than for resale, sublease, or subrent." MCL 205.51(1)(b). It defines "tangible personal property" as "personal property that can be seen, weighed, measured, felt, or touched or that is in any other manner perceptible to the senses and includes electricity, water, gas, steam, and prewritten computer software." MCL 205.51a(r). The GSTA predates the MMMA and the MMFLA.

"As a general rule, sales tax applies only to sales of tangible personal property, not sales of services." *Catalina Mktg*, 470 Mich at 19. "[S]ales tax will not apply to transactions where the rendering of a service is the object of the transaction, even though tangible personal property is exchanged incidentally." *Id*. at 24 (quotation marks and citation omitted). Plaintiff does not dispute, and this Court has treated as self-evident, that marijuana is "tangible personal property." See *Greer v Dep't of Treasury*, 145 Mich App 248, 250-252; 377 NW2d 836 (1985). "Because taxation is the rule and exemption from taxation the exception, the burden is on the claimant to establish the right to a tax exemption." *Campbell v Dep't of Treasury*, 509 Mich 230, 238; 984 NW2d 13 (2022). Therefore, the question before us is not whether the MMMA or the MMFLA *impose* sales tax on transactions involving medical marijuana, but whether plaintiff has established a statutory right to a tax *exemption* under either statute.

As for whether an exception applies to plaintiff, the MMMA provides a narrow statutory exemption from sales taxation for primary caregivers recouping the costs of their services. Specifically, primary caregivers "may receive compensation for costs associated with assisting a registered qualifying patient in the medical use of marihuana" and "such compensation does not constitute the sale of controlled substances." MCL 333.26424(f). There is no such language in the MMFLA providing the same exception to provisioning centers. The Legislature chose to exempt *only* compensation provided to registered primary caregivers. MCL 333.26424(f). "Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there." *GMAC LLC v Treasury Dep't*, 286 Mich App 365, 372; 781 NW2d 310 (2009) (quotation marks and citation omitted); see also *Robinson v Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010) (recognizing that courts "may not read into [a] statute what is not within the Legislature's intent as derived from the language of the statute.") (quotation marks and citation omitted). "The omission of a provision should be presumed as intentional." *GMAC*, 286 Mich App at 372. "It is a well-known principle that the Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws." *Id*. The Legislature was aware of the MMMA when it enacted the MMFLA. Its decision not to include a similar exception for provisioning centers must be deemed intentional, meaning that, while there is a sales-tax exception for primary caregivers recouping costs from patients under the MMMA, there is no equivalent exception for provisioning centers under the MMFLA.[3]

Plaintiff argues that it provides the same type of services as primary caregivers, but on a larger scale, and that those services cannot be isolated from its marijuana sales. Plaintiff's argument misses the point. Plaintiff is not a registered primary caregiver; it is a provisioning center. The Legislature expressed its intent to treat provisioning centers differently from registered primary caregivers by providing terms with different definitions. Plaintiff's attempt to analogize its operations to those of primary caregivers does not change the fact that the Legislature did not provide a sales-tax exemption for provisioning centers. Therefore, plaintiff is not entitled to the tax exemption the MMMA provides to primary caregivers for recouping costs.[4]

---

[3] Relatedly, plaintiff's argument that the Legislature's imposed excise tax in the MMFLA, see MCL 333.27601(1), reflects its intent to not impose a sales tax is unpersuasive. The Legislature imposed a sales tax already through the GSTA; there was no need to do so again through the MMFLA. If the Legislature intended to exempt provisioning centers from sales tax, it would have expressly done so. It did not. The excise tax in the MMFLA does not change this; if anything, it further supports the conclusion that the Legislature intentionally excluded an express exemption from sales tax in the MMFLA.

[4] We reject plaintiff's argument that the Court of Claims erred by neglecting to perform the *Catalina* test. The *Catalina* test is used to determine whether a transaction constitutes a provision of services or a sale of goods for taxation purposes. *Catalina Mktg*, 470 Mich at 24-25. The Legislature clearly defined primary caregivers as people who provide assistance with the use of medical marijuana for their patients, while it defined provisioning centers as entities involved in the retail sale of marijuana for use by patients. MCL 333.26423(l); MCL 333.27102(w). The

## V. RELIANCE ON THE 2011 LETTER

Plaintiff next argues that it was entitled to rely on the 2011 letter, and the Court of Claims erred by determining otherwise. We disagree.

First, plaintiff argues that the question of whether it reasonably relied on the 2011 letter is "a factual determination that cannot be made on a motion under MCR 2.116(C)(8)." In support of this argument, plaintiff cites *Jim-Bob, Inc v Mehling*, 178 Mich App 71; 443 NW2d 451 (1989). But *Jim-Bob* does not support plaintiff's argument. In *Jim-Bob*, we held that "[a] factual question existed as to whether [the] defendants were estopped from raising the statute of frauds defense against [the] plaintiff because [the] plaintiff's reliance on [a defendant's] oral agreement to enter into a new lease was reasonable and justified." *Jim-Bob*, 178 Mich App at 88. *Jim-Bob* concerned a situation in which factual disputes existed regarding some of the defendant's oral promises, and, therefore, a question of fact remained as to whether the plaintiff reasonably relied on those promises. *Id*. at 88-89. As the Court of Claims correctly noted, there is no factual dispute as to the contents of the 2011 letter. It is a written document attached to plaintiff's complaint.

Turning to the letter itself, it was written before provisioning centers were defined by statute, and addresses only the sales-tax implications of "a caregiver's compensation for costs associated with assisting a patient in the medical use of marihuana[.]" Even before the MMFLA's definition of a "provisioning center" came into effect, there is no dispute that plaintiff did not qualify as a primary caregiver under the MMMA. The MMMA identifies a primary caregiver as "a person who is at least 21 years old and who has agreed to assist with a patient's medical use of marihuana[.]" MCL 333.26423(*l*). While, generally, "a corporation is its own person under Michigan law," *Salem Springs, LLC v Salem Twp*, 312 Mich App 210, 222; 880 NW2d 793 (2015), the MMMA's language indicates it is referring to an individual, biological person, not a corporate entity. Additionally, the 2011 letter itself clearly stated that the MMMA "does not provide for state-regulated retail stores or dispensaries." Indeed, plaintiff recognized this distinction between itself and primary caregivers in its complaint when it stated: "Prior to the passage of the MMFLA numerous provisioning centers like [plaintiff] operated within the state and facilitated the provision of medical marijuana supplied by registered primary caregivers to registered qualifying patients in the state." Plaintiff's tacit concession implies that it was aware it was not a primary caregiver as contemplated by the MMMA. Given the plain terms of the MMMA and MMFLA, as well as the undisputed contents of the 2011 letter, plaintiff has failed to establish that it reasonably relied on the 2011 letter in deciding not to pay sales tax in 2017.[5]

---

Legislature therefore expressly defined provisioning center activities as sales, not services. Therefore, the *Catalina* test is unnecessary, and the Court of Claims did not err in holding otherwise.

[5] We also note that, plaintiff has failed to meaningfully explain the legal basis for its claim that reasonable reliance on the 2011 letter would entitle it to relief from the tax liability at issue in this case. Plaintiff expressly disavows any reliance on MCL 205.6a—rightly so, given that the 2011 letter is undisputedly not "a bulletin or letter ruling" within the meaning of that statute—but does not otherwise identify what legal authority entitle it to its claimed reliance on the 2011 letter. "An

-7-

## VI. EQUAL PROTECTION AND UNIFORMITY OF TAXATION

Plaintiff next argues that the Treasury violated the Equal Protection Clauses in the Michigan and United States Constitutions, and the Uniformity of Taxation Clause in the Michigan Constitution by treating it differently than primary caregivers. We disagree.

> To comply with the Equal Protection Clause of the United States Constitution, US Const, Am XIV [and the Michigan Constitution, Const 1963, art 1, § 2], and the Uniformity of Taxation Clause of the Michigan Constitution, Const 1963, art 9, § 3, [the Treasury] is required to exercise equal treatment of similarly situated taxpayers. [*Lear Corp v Dep't of Treasury*, 299 Mich App 533, 538; 831 NW2d 255 (2013) (quotation marks and citation omitted).]

The "plaintiff has the burden of establishing that [the Treasury] failed to treat similarly situated enterprises equally," and the Treasury "is only required to show a rational basis for its decision." *Id*. People in different circumstances do not need to be treated the same. *Syntex Labs v Dep't of Treasury*, 233 Mich App 286, 290; 590 NW2d 612 (1998). "A rational basis shall be found to exist if any set of facts reasonably can be conceived to justify the alleged discrimination." *Id*.

In support of its equal-protection and uniform-taxation claims, plaintiff claims that it cannot be treated differently than primary caregivers for tax purposes because it "provides the same identical type of services to its customers as primary caregivers do and does so in a more professional and complete manner." Plaintiff's argument lacks merit. Provisioning centers and primary caregivers are statutorily defined as different actors with different rights and restrictions. Primary caregivers are limited to five patients, and may only recover "costs" associated with assisting their patients. MCL 333.26423(*l*). Provisioning centers like plaintiff, on the other hand, have no such patient limit and may sell marijuana "at retail[.]" MCL 333.27102(w). As the Court of Claims correctly recognized, these differences provide a rational basis for treating provisioning centers like plaintiff differently than primary caregivers for sales-tax purposes.

## VII. DENIAL OF PLAINTIFF'S MOTION FOR SUMMARY DISPOSITION

Plaintiff lastly argues that, since the only reason given by the Court of Claims for denying plaintiff's motion for summary disposition under MCR 2.116(C)(10) was its erroneous conclusion that summary disposition under MCR 2.116(C)(8) was warranted, this Court should remand the case for the Court of Claims to properly evaluate the merits of plaintiff's motion. We disagree. Plaintiff's entire argument as to this issue is that the Court of Claims improperly granted the Treasury's motion for summary disposition. We have concluded that it did not. Thus, remand is unnecessary.

---

appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *In re Warshefski*, 331 Mich App 83, 87; 951 NW2d 90 (2020) (quotation marks and citation omitted).

Affirmed.

/s/ Thomas C. Cameron
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani